## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

EMILY SCOON,

      Plaintiff,

v.

RITCHIE ENTERPRISES, LLC;
SANDUSKY INVESTMENTS, LLC; and
DONALD DUANE RITCHIE,
*in his personal and professional capacities*;

      Defendants.

Case No. 19-cv-13440

Hon.

---

Sarah S. Prescott (P70510)
Nora E. Mahlberg (P83584)
Salvatore Prescott & Porter, PLLC
Attorneys for Plaintiff
105 E. Main Street
Northville, MI 48167
(248) 679-8711
prescott@spplawyers.com
mahlberg@spplawyers.com

---

## COMPLAINT AND JURY DEMAND

Plaintiff Emily Scoon, by and through her attorneys, SALVATORE PRESCOTT & PORTER, submits this Complaint and states as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff is a resident of Sandusky, Michigan.

2. Defendant Ritchie Enterprises, LLC, is a limited liability company incorporated in Michigan, with its principal place of business in Sandusky, Michigan, with Donald Duane Ritchie serving as its registered agent.

3. Defendant Sandusky Investments, LLC, is a limited liability company incorporated in Michigan, with its principal place of business in Sandusky, Michigan, with Donald Duane Ritchie serving as its registered agent.

4. Defendant Donald Duane Ritchie is an individual who, on information and belief, is a resident of Sandusky, Michigan.

5. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

6. Plaintiff's claims for violations of Michigan state law concern the same actions and omissions that form the basis of Plaintiff's claims under federal law such that they are all part of the same case or controversy. This Court has supplemental jurisdiction over those state law claims pursuant to 28 U.S.C. § 1367.

7. Venue is appropriate under 28 U.S.C. § 1391, since the substantial part of the events giving rise to this action occurred in this District, Defendants reside and conduct business in this District, and Plaintiff resides in this District.

## GENERAL ALLEGATIONS

8. Plaintiff is a 36-year-old woman from Sandusky, Michigan.

9. Plaintiff is Native American.

10. Plaintiff has Fetal Alcohol Syndrome, diabetes, Turner syndrome, attention-deficit/hyperactivity disorder, tachycardia, as well as a learning disability and a hearing impairment.

11. Plaintiff has two small assistance dogs: one to help her with her diabetes, and one to assist with her hearing impairment.

12. Plaintiff has received Social Security Disability Insurance since she was an infant.

13. Plaintiff has no criminal record and has never been evicted from an apartment.

14. In 2015, Plaintiff's father, David Vannest, signed a lease with Ritchie Enterprises, LLC and moved into an apartment at the Sandusky Manor Apartments, located at 180 Custer Street in Sandusky, Michigan.

15. Vannest looks white and has light skin.

16. Vannest is in poor health and requires 24-hour, seven-day-a-week care.

17. Plaintiff serves as her father's caretaker, and her father is heavily reliant on her for care and support.

18. Soon after Vannest signed a lease with Defendants, Plaintiff requested that she enter into a rental agreement with Defendants in order to assist in Vannest's care.

19. Ritchie refused, calling her and "injun," "squaw," and "n*****."

20. As Plaintiff would soon learn, Ritchie would come to call her these names with some regularity.

21. Two years later, in 2017, and hoping Ritchie had changed his mind, Plaintiff again requested that she rent from Defendants.

22. Ritchie again refused and again called Plaintiff several racial epithets.

23. Two years later, in June 2019, Plaintiff again requested that she rent from Defendants.

24. This time, Ritchie explicitly asked Plaintiff about her nationality.

25. Plaintiff responded that she was mixed race, to which Ritchie responded, "that's not good enough because I need to know."

26. Plaintiff then said she was Native American.

27. Ritchie responded that he could not rent to her because "they" don't pay rent and again called Plaintiff a "squaw," "injun," and "n*****."

28. Around the time of this conversation, Plaintiff asked how much extra it would cost for her to have her assistance dogs.

29. Ritchie told her she could not live in the apartment because "there are no pets allowed" and because the apartment was too small for her two dogs.

30. Plaintiff told Ritchie that they were assistance animals and showed him documentation.

31. Plaintiff then offered to rent a two-bedroom apartment so space would not be an issue.

32. Ritchie still refused to rent to her.

33. Upon information and belief, Ritchie permits other tenants to keep two dogs, including large dogs, as pets in one-bedroom apartments.

34. Upon information and belief, Defendants were advertising for one- and two-bedrooms apartments during this time.

35. Upon information and belief, Ritchie has been regularly showing available apartments to prospective tenants.

36. Shortly after Plaintiff was denied a co-tenancy in June 2019, Vannest overdosed and had to be hospitalized.

37. Plaintiff takes responsibility for making sure Vannest is adequately cared for.

38. So, although unable to live with her father, Plaintiff still tries to fulfill her caretaking role the best she can through temporary visits.

39. Plaintiff frequently visits her father to dispense his medication, drop off his groceries, cook him meals, bathe him, and clean his apartment.

40. Plaintiff's visits have been disrupted, as recently as July, because Ritchie or other residents would call the police to remove her as a means of harassment.

41. Upon information and belief, Ritchie instructed other tenants in the building as well as hired maintenance workers to call the police and call him when Plaintiff came to the apartment.

42. If Ritchie himself was in the building when Plaintiff arrived, he would call the police on her for "trespassing," simply because she was visiting, and would tell her to leave.

43. As a result of this harassment, Plaintiff often had to leave her father's apartment.

44. At times, when Ritchie saw that Plaintiff was visiting her father, he has shaken his cane and stomped his foot at Plaintiff, while yelling that that she has to leave.

45. The incessant harassment has deterred Plaintiff from visiting her father, even though she senses the urgency and need to fulfill her caretaking duties.

46. Given the urgency of the situation, Plaintiff's counsel sent a cease-and-desist letter on September 19, 2019 to Ritchie, copying the Chief of the Sandusky Police Department, demanding that he not harass Plaintiff when she visits her father, including calling the police as a means of harassment or instructing others to do the same.

47. That letter again informed Ritchie that Plaintiff has two assistance dogs and warned him that his refusal to rent to her because of her assistance dogs was unlawful.

48. On September 25, 2019, Plaintiff again requested that she rent from Defendants in order to care for her father.

49. To date, she has not received a response.

50. Desperate to not have to leave her father alone, Plaintiff, through counsel, requested on October 3, 2019 that Plaintiff be able to lease a two-bedroom apartment with her father when one becomes available, and additionally requested that Plaintiff be permitted to

stay with her father as a reasonable accommodation for his disability, until more appropriate housing becomes available.

51. On October 10, 2019, Ritchie denied the request, stating that "[o]ur lease clearly states that only one (1) dog, or one (1) cat is allowed" and since "Ms. Scoon refused to have only 1 dog, she was turned down from living with her dad."

52. He further stated that "[a]t the present time, we don't have any 2-bedroom apartments available."

53. Throughout the summer, and as recently as October 30, 2019, Defendants advertised for available two-bedroom apartments in local newspapers.

54. Ritchie has been informed on at least two occasions that Plaintiff's two dogs are assistance animals and has been personally shown medical paperwork of that designation.

55. Plaintiff's ability to care for her father has been severely limited by Ritchie's harassment and discrimination.

56. Indeed, in October, when Plaintiff was still denied the ability to live with her father, Vannest had to be hospitalized again because of a failure to comply with medical treatment, including taking his medication.

57. Plaintiff has suffered severe emotional distress, mental anguish, embarrassment, humiliation, and loss of enjoyment from Defendants' years of harassment and discrimination.

58. Plaintiff has further suffered from the constant fear and concern she has for her father's health since she cannot live with and therefore properly care for him.

## COUNT I
### FAIR HOUSING ACT (42 U.S.C. § 3601, *et seq.*)– Race Discrimination

59. Plaintiff incorporates and restates paragraphs 1 through 58 as if set forth fully herein.

60. Plaintiff is an aggrieved person as defined by 42 U.S.C. § 3602(i).

61. Sandusky Manor Apartments, operated by Defendants, are "dwelling[s]" as defined by 42 U.S.C. § 3602(b).

62. Plaintiff is Native American.

63. Defendants are owners of rental property.

64. Plaintiff made a bona fide offer to rent an apartment from Defendants.

65. Plaintiff was qualified to rent the apartment.

66. Defendants refused to rent, negotiate for the rental of, or otherwise made unavailable or denied, a dwelling to Plaintiff because of her race, in violation of 42 U.S.C. § 3604(a).

67. Defendants had available apartments to rent.

68. Defendants intentionally and recklessly disregarded Plaintiff's rights.

69. As a direct and proximate result of Defendants' actions, Plaintiff has suffered the indignity of discrimination, suffered anguish, mental shock, embarrassment, severe emotional distress, loss of enjoyment, and humiliation.

70. Plaintiff is also entitled to punitive and/or exemplary damages.

## COUNT II
### FAIR HOUSING ACT (42 U.S.C. § 3601, *et seq.*)– National Origin Discrimination

71. Plaintiff incorporates by reference paragraphs 1 - 70 as if fully set forth herein.

72. Plaintiff is of Native American descent.

73. Plaintiff made a bona fide offer to rent an apartment from Defendants.

74. Plaintiff was qualified to rent the apartment.

75. Defendants refused to rent, negotiate for the rental of, or otherwise made unavailable or denied, a dwelling to Plaintiff because of her national origin, in violation of 42 U.S.C. § 3604(a).

76. Defendants had available apartments to rent.

77. Defendants intentionally and recklessly disregarded Plaintiff's rights.

78. As a direct and proximate result of Defendants' actions, Plaintiff has suffered the indignity of discrimination, suffered anguish, mental shock, embarrassment, severe emotional distress, loss of enjoyment, and humiliation.

79. Plaintiff is also entitled to punitive and/or exemplary damages.

## COUNT III
## FAIR HOUSING AMENDMENTS ACT (42 U.S.C. § 3601, *et seq.*)– Disability Discrimination

80. Plaintiff incorporates by reference paragraphs 1 - 79 as if fully set forth herein.

81. Plaintiff has a physical or mental impairment that substantially limits one or more of her major life activities and has a record of having such an impairment.

82. Thus, at all relevant times, Plaintiff was and is handicapped as defined by 42 U.S.C. § 3602(h).

83. Plaintiff was qualified to rent apartments from Defendants.

84. As described above, Defendants discriminated against Plaintiff by making unavailable or otherwise denying her an apartment because of her disability and need for accommodation in violation of 42 U.S.C. § 3604(f)(1).

85. Defendants discriminated against Plaintiff pursuant to 42 U.S.C. § 3604(f)(3)(B) by refusing and continuing to refuse, despite repeated requests, to make a reasonable

accommodation for Plaintiff in the rules, policies, practice or services at Sandusky Manor Apartments.

86. Plaintiff was and is unable to rent at Defendants' property because Defendants refused and continue to refuse to make an accommodation with respect to the one-pet policy.

87. Thus, such an accommodation was and is necessary to afford Plaintiff an equal opportunity to use and enjoy an apartment as non-handicapped occupants in the apartment complex.

88. The requested accommodation of permitting Plaintiff to have her two, small assistance dogs will not cause an undue administrative burden on or expense to Defendants.

89. Defendants intentionally and recklessly disregarded Plaintiff's rights.

90. As a direct and proximate result of Defendants' actions, Plaintiff has suffered the indignity of discrimination, suffered anguish, mental shock, embarrassment, severe emotional distress, loss of enjoyment, and humiliation.

91. Plaintiff is also entitled to punitive and/or exemplary damages.

## COUNT IV
## CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1981

92. Plaintiff incorporates by reference paragraphs 1 - 91 as if fully set forth herein.

93. Plaintiff asked to enter into a residential lease contract with Defendants in order to reside with her father.

94. Plaintiff was qualified to rent the apartment

95. Defendants refused to enter a contractual lease agreement with Plaintiff because of her race.

96. Defendants' discriminatory actions based on race violated Plaintiff's right to which she is entitled to make and enforce contract on an equal basis regardless of race under 42 U.S.C. § 1981.

97. Defendants' discrimination in violation of 42 U.S.C. § 1981 has caused injuries and damages to Plaintiff.

98. Plaintiff is also entitled to punitive and/or exemplary damages.

## COUNT V
### CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1982

99. Plaintiff incorporates by reference paragraphs 1 - 98 as if fully set forth herein.

100. Plaintiff is Native American.

101. Plaintiff asked to enter into a residential lease agreement with Defendants in order to reside with her father.

102. Plaintiff was qualified to rent the apartment

103. Defendants refused to lease Plaintiff an apartment because of her race.

104. Defendants' discriminatory actions based on race violated Plaintiff's right to which she is entitled to lease real property on an equal basis regardless of race under 42 U.S.C. § 1982.

105. Defendants' actions demonstrate and willful and gross disregard for Plaintiff's known rights.

106. Defendants' discrimination in violation of 42 U.S.C. § 1982 has caused injuries and damages to Plaintiff.

107. Plaintiff is also entitled to punitive and/or exemplary damages.

## COUNT VI
### PERSONS WITH DISABILITIES CIVIL RIGHTS ACT (Mich. Comp. Laws 37.1506a) – Failure to accommodate disability

108. Plaintiff incorporates by reference paragraphs 1 - 107 as if fully set forth herein.

109. Plaintiff is disabled as defined by M.C.L. § 37.1103(d).

110. Defendants knew of Plaintiff's disability or should have reasonably been expected to know of it.

111. An accommodation of Plaintiff's disability was necessary to afford Plaintiff an equal opportunity to use and enjoy the property as non-handicapped occupants do, pursuant to M.C.L. § 37.1506a(1)(b).

112. That accommodation did not present an undue hardship or burden on Defendants under M.C.L. § 37.1102(2).

113. Defendants have violated and are continuing to violate the PWDCRA by refusing and continuing to refuse, despite repeated requests, to make reasonable accommodations for Plaintiff concerning her assistance animals.

114. Defendants intentionally and recklessly disregarded Plaintiff's rights.

115. As a direct and proximate result of Defendants' actions, Plaintiff has suffered the indignity of discrimination, suffered anguish, mental shock, embarrassment, severe emotional distress, loss of enjoyment, and humiliation.

116. Plaintiff is also entitled to punitive and/or exemplary damages.

### COUNT VII
### PERSONS WITH DISABILITIES CIVIL RIGHTS ACT (Mich. Comp. Laws. 37.1502) – Disability Discrimination

117. Plaintiff incorporates by reference paragraphs 1 - 116 as if fully set forth herein.

118. Plaintiff is a person with a disability as defined by M.C.L. § 37.1103.

119. Plaintiff has physical or mental impairments that substantially limits one or more of her major life activities and is unrelated to her ability to acquire, rent, or maintain property thus rendering her disabled as defined in M.C.L. § 37.1103.

120. Defendants knew of Plaintiff's disability or should have reasonably been expected to know of it.

121. Plaintiff sought to rent from Defendants.

122. Plaintiff was qualified to rent Defendants' apartments.

123. Defendants refused to rent to Plaintiff on the basis of her disability, in violation of M.C.L. § 37.1502.

124. Defendants had available apartments to rent.

125. As a direct and proximate result of Defendants' actions, Plaintiff has suffered the indignity of discrimination, suffered anguish, mental shock, embarrassment, severe emotional distress, loss of enjoyment, and humiliation.

126. Plaintiff is also entitled to punitive and/or exemplary damages.

## COUNT VIII
## ELLIOTT-LARSEN CIVIL RIGHTS ACT (Mich. Comp. Laws 37.2502) –National Origin Discrimination

127. Plaintiff incorporates by reference paragraphs 1 – 126 as if fully set forth herein.

128. Pursuant to M.C.L. § 37.2101, *et seq.*, Defendants, and each of them, individually and, collectively, were obligated to refrain from discrimination against the Plaintiff on account of national origin in considering her tenancy.

129. As the owner of rental property, Defendants are people engaged in real estate transactions pursuant to M.C.L. § 37.2501.

130. Plaintiff asked to rent from Defendants.

131. Plaintiff was qualified to rent the apartment.

132. Defendants refused to rent to Plaintiff on the basis of Plaintiff's national origin.

133. Plaintiff's national origin was one factor that made a difference in Defendants' decision to deny her tenancy.

134. Defendants still had available apartments to rent.

135. Defendants intentionally and recklessly disregarded Plaintiff's rights.

136. As a direct and proximate result of Defendants' actions, Plaintiff has suffered the indignity of discrimination, suffered anguish, mental shock, embarrassment, severe emotional distress, loss of enjoyment, and humiliation.

137. Plaintiff is also entitled to punitive and/or exemplary damages.

## COUNT IX
## ELLIOTT-LARSEN CIVIL RIGHTS ACT (Mich. Comp. Laws 37.2502) – Race Discrimination

138. Plaintiff incorporates by reference paragraphs 1 - 137 as if fully set forth herein.

139. Pursuant to M.C.L. § 37.2101, *et seq.*, Defendants, and each of them, individually and, collectively, were obligated to refrain from discrimination against the Plaintiff on account of race in considering her tenancy.

140. Plaintiff asked to rent from Defendants.

141. Plaintiff was qualified to rent Defendants' apartments.

142. Defendants refused to rent to Plaintiff on the basis of her race.

143. Plaintiff's race was one factor that made a difference in Defendants' decision to deny her tenancy.

144. Defendants had available apartments to rent thereafter.

145. Defendants intentionally and recklessly disregarded Plaintiff's rights.

146. As a direct and proximate result of Defendants' actions, Plaintiff has suffered the indignity of discrimination, suffered anguish, mental shock, embarrassment, severe emotional distress, loss of enjoyment, and humiliation.

147. Plaintiff is also entitled to punitive and/or exemplary damages.

## COUNT X
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

148. Plaintiff incorporates by reference paragraphs 1 - 147 as if fully set forth herein.

149. Defendants viciously harassed Plaintiff using derogatory racial epithets to her face as set forth above.

150. Defendants repeatedly and baselessly summoned the police when she visited her ailing father as a means of harassment and instructed other people to call the police when Plaintiff visited her father as a means of harassment.

151. Never having an issue with the law, Defendants' actions intimidated Plaintiff and scared her away from visiting her father, despite her need to care for him.

152. Defendants' verbal abuse and improper use of the police as a means of harassment and intimidation constituted outrageous conduct that is so extreme as to go beyond all possible bounds of decency and is to be regarded as atrocious and utterly intolerable in a civilized community.

153. Defendants' actions were intentional and reckless.

154. Defendants' actions directly and proximately caused Plaintiff to suffer severe emotional distress.

155. Plaintiff is entitled to punitive and/or exemplary damages.

## COUNT XI
## ASSAULT

156. Plaintiff incorporates by reference paragraphs 1 - 155 as if fully set forth herein.

157. Defendant Ritchie subjected Plaintiff to a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact, when Defendant Ritchie shook his cane at her, stomping and yelling at her to leave her father's apartment.

158. Plaintiff suffered physical and emotional harm as a result of the assault.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Emily Scoon respectfully prays that this Court enter an order against Defendants, as follows:

159. Award compensatory damages in an amount that would fully compensate the Plaintiff for the loss of enjoyment, humiliation, embarrassment, emotional distress and mental anguish caused by Defendants' violations of the law;

160. Award punitive damages in an amount that would punish Defendants for the willful, wanton, and reckless misconduct and indifference alleged in this Complaint and that would effectively deter the Defendants from future discriminatory behavior;

161. Award Plaintiff reasonable attorneys' fees and costs;

162. Order Defendants to receive training on the requirements of the FHA, FHAA, PWDCRA, and ELCRA; and

163. Other such other relief as this Court deems just and equitable.

Respectfully Submitted,
SALVATORE PRESCOTT & PORTER, PLLC

                                                   <u>/s/Sarah Prescott</u>
                                                   Sarah S. Prescott (P70510)
                                                   Nora E. Mahlberg (P83584)
                                                   Salvatore Prescott & Porter, PLLC
                                                   Attorneys for Plaintiff
                                                   105 E. Main Street
                                                   Northville, MI 48167
                                                   (248) 679-8711
                                                   prescott@spplawyers.com
                                                   mahlberg@spplawyers.com

Dated: November 20, 2019

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

/s/Sarah Prescott
Sarah S. Prescott (P70510)
Nora E. Mahlberg (P83584)
Salvatore Prescott & Porter, PLLC
Attorneys for Plaintiff
105 E. Main Street
Northville, MI 48167
(248) 679-8711
prescott@spplawyers.com
mahlberg@spplawyers.com

Dated: November 20, 2019