**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**EMILY SCOON,**

      **Plaintiff,**

                              **Case No. 19-13440**

**v.**

                              **Hon. Denise Page Hood**

**RITCHIE ENTERPRISES, LLC, et al.,**

      **Defendants.**

_____/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT   [ECF No. 59], GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT CONSIDERED AS
A MOTION TO EXTEND [ECF No. 66], DENYING DEFENDANTS'
MOTION TO STRIKE RESPONSE TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT [ECF No. 72] and DENYING WITHOUT
PREJUDICE DEFENDANTS' MOTION TO COMPEL [ECF No. 57]**

## I.   INTRODUCTION

The matter before the Court involves a dispute between Plaintiff

Emily Scoon ("Plaintiff") and Defendants Donald Duane Ritchie ("Ritchie),

Ritchie Enterprises, LLC, Sandusky Investments, LLC, and (collectively

"Defendants"). Plaintiff's Complaint alleges eleven violations of various

federal and state laws. [ECF No. 1] Plaintiff alleges Race Discrimination

(Count I); National Origin Discrimination (Count II); and Disability

Discrimination (Count III), all in violation of the Fair Housing Act ("FHA"), 42

U.S.C. § 3601, *et seq.* [*Id*.] Plaintiff also alleges Civil Rights infringements, in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 and § 1982 (Counts IV, V). [*Id*.] Plaintiff's state law claims include Failure to Accommodate Disability, in violation of Persons with Disabilities Act ("PWDRA"), M.C.L § 37.1506(a) (Count VI); Disability Discrimination, in violation of PWDRA, M.C.L. § 37.1502 (Count VII); National Origin Discrimination, in violation of the Elliot-Larsen Civil Rights Act ("ELCRA"), M.C.L. § 37.2502 (Count VIII); Race Discrimination, in violation of ELCRA, M.C.L. § 37.2502 (Count IX); Intentional Infliction of Emotional Distress (Count X); and Assault (Count XI). [*Id*.]

Plaintiff now seeks compensatory and punitive damages, reasonable attorneys' fees and costs, and an order requiring Defendants to receive training on the Fair Housing Act, the Persons with Disabilities Act, and the Elliot-Larsen Civil Rights Act. [*Id.* at 15]

### A. Procedural Background

On October 1, 2020, Defendants filed a Motion for Summary Judgment [ECF No. 59] Plaintiff filed an untimely Response on November 5, 2020. [ECF No. 70] Defendants filed at Reply on November 18, 2020. [ECF No. 75] On October 22, 2020, Plaintiff filed a Motion for Summary Judgment, which the Court considers as a Motion to Extend. [ECF No. 66]

Defendants filed a Response on November 4, 2020. [ECF No. 69] Plaintiff filed her Reply November 10, 2020. [ECF No. 71] On November 13, 2020, Defendants filed a Motion to Strike [ECF No. 72] Plaintiff's Response to their Motion for Summary Judgment. Plaintiff filed a Response to the Motion to Strike on November 13, 2020. [ECF No. 73] Defendants also filed a Motion to Compel which were responded and replied thereto. [ECF No. 57]

### B.    Factual Background

The instant case involves a series of encounters between Plaintiff and Defendant Ritchie during 2015-2019. It is undisputed that Ritchie owns and manages the Sandusky Manor Apartments, and he makes all rental decisions. [ECF No. 70, PageID.944] Both parties provide factual scenarios that contradict one another. The Court's recitation includes undisputed facts or otherwise notes where the parties' versions diverge.[1]

Plaintiff Emily Scoon is a 37-year-old woman with various, chronic mental and physical disabilities. [*Id.* at 943] Because she suffers from Turner Syndrome and learning and attention disabilities, Plaintiff has received social security disability income since she was an infant. [*Id.*]

---

[1] When the parties differ on material facts, the Court views those facts in favor of the nonmoving party.

Plaintiff also has additional medical conditions such as Fetal Alcohol Syndrome, Diabetes, Attention Deficit Hyperactivity Disorder, Tachycardia, and a hearing impairment. [*Id.*] Plaintiff has two animals that help her with her hearing impairment and Diabetes. [*Id.*] Plaintiff has never been evicted from an apartment and has no criminal record. [*Id.*]

In 2010, Plaintiff began living with her father David Vannest ("Vannest") in Sandusky, Michigan. [*Id.* at 944] In 2015, Vannest, a white-male, moved into his current apartment in the Sandusky Manor Apartments complex ("the apartments"). [*Id.*] Vannest is in poor health and requires constant care. [*Id.*] He suffers from Alzheimer's and has a steel plate in his head from a previous brain injury. [*Id.*] As her father's caretaker, Plaintiff has attempted to join her father's lease or separately rent another apartment in the building on three separate occasions between 2015-2019. [*Id.*] During the time period Plaintiff sought to rent from Defendants, they were advertising available one and two-bedroom apartments. [*Id.*] Defendants' records also indicate that there were one-bedroom apartments available during this time period. [*Id.*]

Plaintiff first asked Defendants if she could join her father's lease in 2015. [*Id.*] Ritchie responded to Plaintiff's request by asking about her nationality and heritage. [*Id.*] Plaintiff replied that she is Native American

and German. [*Id.*] As Plaintiff indicates, Ritchie rejected Plaintiff's attempt to join her father's lease and called her a "squaw," an "injun," and a "n*****." [*Id.*] Ritchie maintains that he never called Plaintiff racial slurs. [ECF No. 59, PageID.638] According to Ritchie, he asked about Plaintiff's income and asked her to submit an application as part of the official rental process. [*Id.* at 639] To date, Plaintiff has not submitted an official rental application. [*Id.*]

In 2017, Plaintiff asked to rent from Ritchie again and was also denied. [ECF No. 70, PageID.945] According to Plaintiff, Ritchie then called her the same racial slurs as in 2015. [*Id.*] Identical events occurred again in June 2019. [*Id.*] By 2019, Plaintiff was designated as Vannest's official caretaker with the Michigan Department of Health and Human Services. [*Id.* at 946]

When trying to rent an apartment, Plaintiff also asked for accommodations for her disabilities. [*Id.*] Her request came in the form of asking to live with her two assistance animals. [*Id.*] Ritchie admits that he did not allow Plaintiff to join her father's lease or rent a separate apartment because she "refused to have only 1 dog. [*Id.*] Despite Ritchie's assertion, Plaintiff claims she has seen other tenants with two dogs in the complex.

[*Id.* at 947] According to Ritchie, he was never aware that Plaintiff's dogs were supposed to be service animals. [ECF No. 59, PageID.640]

During trips to care for her father, Plaintiff frequently experienced negative encounters with Ritchie and his employees. [ECF No. 70, PageID.947] Plaintiff claims that she had the cops called on her, and on one occasion, Ritchie shook his cane at her, stomped his foot, and told her she had to leave. [*Id.*] Ritchie contends that he has never shaken his cane or stomped his foot towards Plaintiff. [ECF No. 59, PageID.641] At various times since being rejected from living at the apartments, Plaintiff has been homeless—at times living in her car and at a homeless shelter. [ECF No. 70, PageID.947]

## II.   ANALYSIS

### A.   Standard of Review

The Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986).  A fact is material if it could affect the outcome of the case based on the governing substantive law.  *Id.* at 248.  A dispute about a material fact is genuine if, on review of

the evidence, a reasonable jury could find in favor of the nonmoving party. *Id.*

The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the nonmoving party must "go beyond the pleadings and … designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. The Court may grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Conclusory allegations do not create a genuine issue of material fact which precludes summary judgment." *Johari v. Big Easy Restaurants, Inc.*, 78 F. App'x 546, 548 (6th Cir. 2003).

When reviewing a summary judgment motion, the Court must view the evidence and all inferences drawn from it in the light most favorable to the nonmoving party. *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133

(6th Cir. 1986).   The Court "need consider only the cited materials, but it may consider other materials in the record."   Fed. R. Civ. P. 56(c)(3). Courts must not consider evidence based solely on "[a]ffadavits composed of hearsay" when considering motions for summary judgment. *State Mutual Life Assurance Co. v. Deer Creek Park,* 612 F.2d 259, 264 (6th Cir.1979). The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."   *Anderson*, 477 U.S. at 249.

### B.    Defendants' Motion to Strike [ECF No. 72] & Plaintiff's Motion for Summary Judgment[2] [ECF No. 66]

Local Rule 7.1(e)(B) requires a memorandum in opposition to any motion is be filed and served within 21 days after the motion was served. Applying that rule to the instant matter, Plaintiff's memorandum in opposition to Defendants' Motion for Summary Judgment was filed 13 days out of time.

Courts typically prefer to decide motions after duly considering each parties' positions and arguments. The Court is not restricted from considering a dispositive motion without hearing input from a party who was granted an opportunity, but failed to timely provide the Court with its

---

[2] Upon reviewing Plaintiff's Motion for Summary Judgment, the Court determines that it is actually a Motion to Extend the Time to Respond to Defendant's Motion for Summary

arguments. Here, Plaintiff has provided the Court with good cause to permit the late filing of her response. Plaintiff's attorney has explained that the continuous discussions and disputes about discovery caused her to file the response brief late.

Plaintiff's untimely filing did not unduly delay resolution of the motion. Defendants also have not asserted, nor articulated, any prejudice resulting from Plaintiff's untimely submission. *See* [ECF No. 72] The Court does not wish to downplay the importance of court deadlines and the local rules that govern those deadlines.   However, exercising its discretion, the Court denies Defendants' Motion to Strike and grants Plaintiff's Motion for Summary Judgment, considered as a motion seeking to extend time.

---

Judgment, and the Court will construe it as a Motion to Extend Time. [ECF No. 66]

## C.    Statute of Limitations

Defendants first argue that Plaintiff's claims are time barred. Housing discrimination has a two-year statute of limitations. 42 U.S.C. §3613(a)(1)(A). And the tort claims have a three-year statute of limitations. This statute of limitations begins when the plaintiff knows or has reason to know of the injury, which is the foundation of the suit. *Potts v. Hill*, 17 Fed. Appx. 302, 305 (6th Cir. 2001) (quoting *Servier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984) (internal citations omitted in original); *see also Huntington Woods v. Wines*, 122 Mich. App. 650, 652 (Mich. Ct. App. 1983) (""The statute is not held in abeyance until a person obtains professional assistance to determine whether he has a cause of action.").

Plaintiff alleges that Ritchie called her racial slurs and refused to rent to her in 2015, but Plaintiff did not file the instant suit until November 2019. Defendants assert that this timeline places Plaintiff's claims beyond the two-year statute of limitations for housing discrimination and beyond the three-year limit for her tort claims. Plaintiff counters that the timeline presented in her version of events establishes that this is a triable fact.

Plaintiff counters that the facts establish that the most recent discriminatory incident alleged occurred "as late as June 2019." According to Plaintiff's assertion, the statute of limitation has not run. *See Campbell v.*

*Grand Trunk Western R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001) (explaining that the statute of limitations is an affirmative defense, and "the burden is on the defendant to show that the statute of

limitations has run."). As Plaintiff indicates, Defendants bear the burden of persuasion at trial so its burden "is higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Surles v. Andison*, 678 F.3d 452, 455–56 (6th Cir. 2012) (internal quotation marks omitted).

Although Plaintiff concedes that Defendants' alleged racial animus first surfaced in 2015, she asserts that the last breach occurred in 2019. Plaintiff then asserts that a violation occurs each time an individual is denied housing because of race, ethnicity, or color. 42 U.S.C. § 3613(a)(1)(A); *see also Hodge v. Serv. Mach. Co.*, 438 F.2d 347, 349 (6th Cir. 1971) (explaining that the statute of limitations begins with "(a) a breach of some legally recognized duty owed by the defendant to the plaintiff; (b) which causes the plaintiff some legally cognizable damage"). As further support, Plaintiff cites § 3613, which provides that an action may be brought "not later than 2 years after...the termination of an alleged discriminatory housing practice." 42 U.S.C. § 3613. Lastly, Plaintiff

contends that under the "continuing violation doctrine," the Court must consider all earlier instances of discriminatory conduct that occurred prior to 2019. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) (holding that all the plaintiff's civil rights claims were timely because the last one occurred within the prescribed statute of limitations). In Defendants' Reply, they argue that the continuing violations doctrine is inapplicable because Plaintiff should have known in 2015 that Ritchie's decision was "permanent." And the continuing violations doctrine does not apply when the first discriminatory act had a degree of permanence. *Anderson v. City of Briston*, 6F.3d 1168, 1175 (6th Cir. 1993); *see also Sumner v. Goodyear Tire & Rubber Co.*, 427 Mich. 505, 525-26 (1986). Plaintiff is correct that Defendants  bear the burden of showing that the statute of limitations has run, and Plaintiff's timeline would place her claims within the statute of limitations. The Court finds that Defendants have not provided sufficient evidence to show that Plaintiff's allegations did not occur as recently as 2019.

### D.    Sections 1981 and 1982 [Counts IV and V]

Next, Defendants argue that they cannot be liable for housing discrimination under § 1981 or § 1982. Cases of alleged discrimination brought pursuant to 42 U.S.C. § 1981 and § 1982 are analyzed under the

12

three-part framework used in Title VII cases as set out by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Terwilliger v. The Olive Garden*, 952 F. Supp. 1224, 1227 (E.D. Mich. 1997). The prima facie elements of a claim of race discrimination are the same under § 1981 and § 1982 as they are under Title VII. *See Gairola v. Com. of Virginia Dept. of General Services, 753* F.2d 1281, 1285 (4th Cir. 1985).

Under the *McDonnell Douglas* framework, Plaintiff has the initial burden of establishing a prima facie case of discrimination. Once the prima facie case has been established, the burden then shifts to the defendant to demonstrate a legitimate, non-discriminatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 793. If the defendant articulates a legitimate reason for its action, the burden then shifts back to the plaintiff to establish by a preponderance of the evidence that the defendant's stated reasons for its actions are mere pretext. *Raciti-Hur v. Homan*, 8 F. Supp. 2d 958, 962 (1998).

A prima facie case of discrimination under 42 U.S.C. § 1981 and§ 1982 is established by showing: (1) the plaintiff is a member of a racial minority, (2) defendant's intent to discriminate on the basis of race, and (3) discrimination concerning one or more of the

activities enumerated in the statute. *Thomas v. National Amusements, Inc.*,

1999 U.S. Dist LEXIS 5188 (E.D.Mich.)

### 1.    Section 1981

Defendants argue that they are not liable under § 1981 because one,

Plaintiff never filed an application with them, and two, if she had, the

application process does not even consider race as a factor for approving

or denying prospective tenants. The relevant statute is 42 U.S.C. §1981,

which provides,

> "All persons within the jurisdiction of the United States shall
> have the same right in every State and Territory to make and
> enforce contracts . . .and to the full and equal benefit of all laws
> and proceedings for the security of persons and property as is
> enjoyed by white citizens."

Defendants cite *Gratz v. Bollinger* as an example of unconstitutional

racial bias, and they attempt to distinguish their behavior from that

admonished in *Gratz*. *See* 539 U.S. 244, 260 n. 13 (2003). In *Gratz* the

Supreme Court held that the University of Michigan's undergraduate

admissions policies violated 42 U.S.C. § 1981 because it used race as a

preferential factor in the admissions process. *Id.* at 276. Defendants say

the instant case differs from *Gratz* because Defendants' policies do not

consider race at all. Defendants use a third-party company to verify rental

applications and race is not even a listed on the rental application. The

factors that Real Check program considers are previous rental history, the existence of judgments, police reports, or prior evictions, and whether someone is a sex offender. [ECF No. 59, PageID.734-37, (Exhibit G)] Defendants further explain that since Plaintiff never completed a rental application, she was never a party to the rental contract so they could not have violated §1981.

Plaintiff responds to that point by arguing that she is still protected § 1981 despite not filling out the rental application. *See Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006) ("[Section 1981] protects the would-be contractor along with those who already have made contracts."); *see also Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 302 (1994) (explaining that § 1981 is "encompassing" and "applies to all phases and incidents of the contractual relationship"). Plaintiff contends that § 1981 applies to discriminatory conduct that "blocks the creation of a contractual relationship" that does not exist yet.

Plaintiff analogizes Ritchie's alleged refusal to give her a form with the conduct of the defendant in *Runyon v. McCrary*. 427 U.S. 160 (1976). In *Runyon*, black parents wished to enroll their children in a white-only private school, but the school refused to accept the students and, in some cases, declined to even give them an enrollment form. *Id.* The Supreme

Court concluded that the defendant's behavior was a "classic violation of § 1981. *Id.* at 172.

Here, Plaintiff asserts that she did not have "the same right" as white tenants "to make" contracts. *See Louisiana Acorn Fair Hous. v. Quarter House*, 952 F. Supp. 352, 357 (E.D. La. 1997) (approving claims under § 1981 and § 1982 where agents refused to show homes to prospective buyers based on racial, ethnic or disability considerations). Plaintiff cites two examples of where Defendants rented to white tenants and did not ask about race or income. [ECF No. 70-4, (Gerber Deposition)]; *see also* [ECF No. 70-5, (Hunter Deposition)] According to Plaintiff, Ritchie questioned her about her racial identity, refused to give her an application, and called her racial slurs. [ECF No. 70, PageID.951]

### 2.    Section 1982

Defendants argue that they are not liable under 42 U.S.C. § 1982, which provides: "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold and convey real and personal property." *See also House of Providence v. Meyer*, No. 19- cv-13424, 2020 U.S. Dist. LEXIS 78614 at *16 n. 2 (E.D. Mich. May 5, 2020). Defendants distinguish their conduct from the actions that warranted the § 1982 claims described

in *Wells v. Rhodes*, 928 F. Supp. 2d 920 (S.D. Ohio 2013) (discussing behavior amounting to a statutory violation includes harassment and intimidation such as cross burning and using racial slurs). Seeking to differentiate their alleged conduct from that in *Wells*, Defendants argue that here, Plaintiff was only refused an apartment. Defendants concede that Plaintiff has a right to enter into lease agreements free from harassment, but counter that she is still required to fulfill the official steps, such as satisfying the income and background check standards.

Responding to Defendants' arguments, Plaintiff disagrees with Defendants' characterization of events. Plaintiff asserts that Defendants attempt to downplay Plaintiff's experience by citing the egregious cross burning example in *Wells*. In Defendants' version, their actions amount to a simple lease denial. Plaintiff argues that Defendants' behavior amounted to much more and involved "outrageous and repeated racial slurs" rather than a routine lease rejection for race-neutral reasons. [ECF No. 70, PageID.953]

### 3. The Parties' Burdens under § 1981 and § 1982

Plaintiff claims to have met her initial burden of establishing a prima facie case of discrimination by alleging that she is of Native American descent. Assuming that Plaintiff has met her initial burden, under

the *McDonnell Douglas* framework the burden then shifts to Defendants to demonstrate a legitimate, non-discriminatory reason for its actions. This Court finds that Defendants have met this burden by describing its race-neutral application program and stating that they thought Plaintiff did not meet their income requirements. Under *McDonnell Douglas*, the burden shifts back to Plaintiff to establish that Defendants' stated reasons for denying her an apartment were mere pretext. Although the Court notes that Defendants presented legitimate, race-neutral reasons for not renting to Plaintiff, the Court also finds that Plaintiff has shown, through the Hunter and Gerber depositions that there is a genuine issue of material fact about whether Defendants' explanations were pretextual.

As Plaintiff indicates, under Rule 56, Defendants must present evidence that there is no question of fact surrounding whether they denied Plaintiff "the same" opportunity to initially lease property as prospective white tenants. After reviewing the Gerber and Hunter depositions and viewing the facts in Plaintiff's favor, the Court finds that there remains triable issues of fact. The Court **DENIES** Defendants' Motion for Summary Judgment as it pertains to § 1981 [Count IV] and § 1982 [Count V].

### E.    Fair Housing Act [Counts I, II] and Elliot-Larsen Civil Rights [Counts VII, VIII] Act Violations

Under the Fair Housing Act,[3] it is unlawful to "refuse to … rent after the making of a bona fide offer … or to refuse to negotiate for … rental of, or otherwise make unavailable … a dwelling to any person because of race, color...or national origin."   42 U.S.C. § 3604. Using the text of the FHA, Plaintiff asserts that this issue turns on whether a reasonable juror could conclude that Plaintiff's experienced conduct, prohibited by the FHA, at the hands of Defendants. As a threshold matter, Plaintiff argues that the FHA reaches refusals to negotiate with prospective tenants and the improper imposition of different qualification standards to secure housing. *See* 24 C.F.R. § 100.60 (1989), as amended at 81 Fed. Reg. 63,074 (Sept. 14, 2016). Plaintiff asserts that such conduct is covered by the FHA because when pervasive enough, the actions can force an individual to abandon their efforts to secure housing.

Plaintiff argues that Defendants incorrectly employ the *McDonnell Douglas* burden shifting framework to analyze Plaintiff's claims because that test is only applicable when there is no "direct evidence" of discrimination. It is true that "[a] plaintiff may establish a prima facie case by presenting credible, direct evidence of discriminatory intent" instead of

---

[3] The Elliot–Larsen Civil Rights Act is the state–law equivalent of the Fair Housing Act so the Court will analyze the claims under the ELCRA and the FHA together.

relying on that test. *Kallabat v. Mich. Bell Tel. Co.*, No. 12-CV-15470, 2015 WL 5358093, at *3 (E.D. Mich. June 18, 2015) (citing *Terbovitz v. Fiscal Court of Adair Cty.*, 825 F.2d 111 (6th Cir.1987)). Plaintiff claims Ritchie's use of the terms "squaw" and "injun" qualify as direct evidence of discrimination. If the Court views the evidence in Plaintiff's favor, as the nonmoving party, then there is direct evidence of discrimination.

Viewing in the light most favorable to Plaintiff, Plaintiff's claim that Ritchie called Plaintiff derogatory terms establishes direct evidence of animus, which creates a genuine issue of material fact.   Plaintiff's testimony is not hearsay since Plaintiff herself is the person who heard the terms.   *Maben v. Southwester Medical Clinic,* Case No. 15-1101, 630 F. App'x 438, 442 (6th Cir. Nov. 4, 2015).

Regardless of the evidentiary nature of Plaintiff's statement, a plaintiff may also establish a prima facie case of discrimination by proving four facts: "1) she is a member of a protected class; 2) she attempted to engage in a real estate-related transaction and met all relevant qualifications for doing so; 3) the defendant refused her the [transaction] despite her qualifications; and 4) the defendant continued to engage in that type of transaction with other parties with similar qualifications." *Michigan*

*Protection and Advocacy Serv., Inc. v. Babin,* 18 F.3d 337, 346 (6th Cir.1994).

Concerning the first factor, Plaintiff indicates that she is protected because she has physical features, such as her skin color, that places her in a protected category. Although Plaintiff was adopted by a non-Native American family, she states that her grandfather is Native American. [ECF No. 59, PageID.707 (Scoon Deposition)]; *see also Bennun v. Rutgers State Univ.*, 941 F.2d 154 (3rd Cir. 1991) (affirming  decision to deny summary judgment in Title VII case without reference to ancestry citing the plaintiff's "belief that he is Hispanic, identifies with and continues to adopt Spanish culture in his life and speaks Spanish in his home"); *see also Morrison v. California*, 291 U.S. 82, 86 (1934) (explaining that there is no strict formula to determine a litigant's race); *see also St. Francis Coll. v. Al–Khazraji*, 481 U.S. 604, 610 n. 4 (1987) (opining that many scientists agree that "racial classifications are for the most part sociopolitical, rather than biological, in nature").

And since courts have determined in the employment context that it can be difficult to "prove" Native American heritage, Plaintiff argues that evidence of a party's intent to treat the plaintiff differently because of race can be used, even if the party's perception of the plaintiff's actual race was

wrong. *See Perkins v. Lake Cty. Dep't of Utilities*, 860 F. Supp. 1262, 1274 (N.D. Ohio 1994) ("[C]onsistent with the intent of Title VII, when racial discrimination is involved perception and appearance are everything. As with the joy of beauty, the ugliness of bias can be in the eye of the beholder."); *see also Jones v. UPS Ground Freight*, 683 F.3d 1283, 1299–300 (11th Cir. 2012); *see also Arsham v. Mayor & City Council of Balt.*, 85 F. Supp. 3d 841, 846 (D. Md. 2015) ("Treating certain people less favorably than others on the basis of a protected classification is the essence of disparate treatment. [citation omitted] This is true regardless of whether an employer intends to discriminate against an individual expressly because of a protected characteristic or intends to discriminate based on the employer's perception, mistaken or accurate, of an individual's protected characteristic.").[4]

---

[4] Plaintiff also cites *Wood v. Freeman Decorating Servs.*, No. 3:08–cv–00375–LRH–RAM, 2010 WL 653764, at *4 (D. Nev. Feb. 19, 2010); *Zayadeen v. Abbott Molecular, Inc.*, No. 10–C–4621, 2013 WL 361726, at *8 (N.D. Ill. Jan. 30, 2013); *Boutros v. Avis Rent A Car System*, No. 10–C–8196, 2013 WL 3834405, at *7 (N.D. Ill. July 24, 2013); *Langadinos v. Appalachian Sch. of Law*, No. 1:05CV00039, 2005 WL 2333460, at *1 n. 6 (W.D.Va. Sept.25, 2006) ("Plaintiffs do not lose the protection of discrimination laws because they are discriminated against for the wrong reasons."); *LaRocca v. Precision Motorcars, Inc.*, 45 F. Supp. 2d. 762, 770 (D. Neb. 1999) ("The fact that Ms. Friend ignorantly used the wrong derogatory ethnic remark toward the plaintiff is inconsequential."); *EEOC Guidance* (providing that discrimination on protected categories, even if based on misperception, is unlawful).

Analogizing the instant case to *Kallabat v. Mich. Bell Tel. Co.*, Plaintiff explains that a defendant's mistaken belief about a plaintiff's race is not a controlling factor. Nos. 12-CV-15470, 2015 WL 5358093, at *6 (E.D. Mich. June 18, 2015) (unpublished). In *Kallabat*, the employer thought that the plaintiff was Muslim. *Id.* Although the employer's belief was mistaken, it ultimately bore no bearing on the court's decision. *Id.* (quoting *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 571 (3d Cir. 2002) ("What is relevant is that the applicant, whether Muslim or not, was treated worse than he otherwise would have been for reasons prohibited by the statute.")).

Plaintiff argues that she also meets the second and third *McDonnell Douglas* factors. As to the second factor, Plaintiff asserts that Ritchie inquired about Plaintiff's race and reacted poorly to it once she disclosed that information. To further support this point, Plaintiff once again cites to Ritchie's alleged use of racial slurs in her presence. Concerning the third factor, Plaintiff indicates that she was "ready and able to rent." [ECF No. 70, PageID.959] Plaintiff cites her social security income of $783 per month as proof of income and also cites to the Gerber and Hunter depositions, which establish that they were unemployed and receiving social security benefits when they applied to rent from Defendants.

Viewing the light most favorable to Plaintiff, the Court finds that she has presented sufficient evidence to create a genuine issue of material fact that Defendants discriminated against her based on her national origin and race under the FHA, and the ELCRA.   Plaitniff has shown direct evidence and also met the McDonnell Douglas burden shifting factors to create a genuine issue of material fact that Defendants' reason for denying her housing was mere pretext.   Defendants' Motion for Summary Judgment under FHA [Counts I and II] and the ELCRA [Counts VII and VIII] is denied.

### F.    Disability under the FHA [Count III] and PWDRA [Counts VI, VII]

The Fair Housing Act[5] prohibits landlord discrimination because of a handicap in part by declining to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be required to afford such individuals equal opportunity to use and enjoy a dwelling 42 U.S.C. § 3604(f)(3)(B); *see also Riverbrook v. Fabode*, No. 349065, 2020 Mich. App. LEXIS 6216 at *13 (Mich. Ct. App. Sep. 17, 2020). To show that a defendant failed to reasonably accommodate a disability, a plaintiff must establish that: (1) she suffers from a disability covered within the FHA, (2) the defendant knew or reasonably should have

---

[5]The FHA and ADA requirements apply to the Michigan PWDCRA because the statutes are "substantially similar." See *Briggs v. Delta Air Lines, Inc.*, 353 F. Supp.3d 641, 648 (E.D. Mich. 2019).

known of plaintiff's disability; (3) the requested accommodation may be required to afford an equal opportunity to enjoy and use the dwelling; (4) the accommodation must be reasonable; and (5) the defendant refused to grant the accommodation. *Overlook Mut. Homes v. Spencer*, 415 F. App'x 617, 621 (6th Cir. 2011).

Defendants claim Plaintiff has not met the *Overlook* test because she does not have a required handicap. Defendants define a handicap or disability as: (1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such impairment, (3) or being regarded as having such an impairment. 42 U.S. C. §3602(h). Here, Plaintiff has alleged various physical and mental conditions, but has not shown that any impairment substantially limits one or more of her major life activities.

Plaintiff argues that she submitted a doctor's note explaining that one dog helped her with her hearing condition. [ECF No. 59, PageID.688] But at her deposition, Defendants note that Plaintiff alleged something different—one dog assisted with her heart condition and the other helped with her Diabetes. According to Defendants, Plaintiff has provided no proof to establish that either dog was a registered service animal. Plaintiff has also expressed that she needed the dogs "to get through the hard times."

[ECF No. 59, PageID.651] Defendants argue that the dogs that Plaintiff refers to are more akin to emotional support animals, which do not qualify as service animals under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132 (Regulations).

Defendants cite *Toma v. 38th District Court* to support their point. 2019 WL 1897157 (E.D. Mich. 2019). The court, in *Toma*, explained that the "ADA's regulations define a 'service animal' as 'any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability.'" *Id.* The court further opined that "the regulation further provides the work or tasks performed by the dog 'must be directly related to the individual's disability,' and 'the provision of emotional support, well-being, comfort, or companionship do[es] not constitute work or tasks for the purposes of this definition.'" *Id.*

Responding to Defendants' argument about proving that the dogs were "registered" service animals, Plaintiff claims that there is no such system and that the ADA classifies qualified dogs as one "that is individually trained to do work or perform tasks for the benefit of an individual with a disability." 28 C.F.R. § 35.104. Although Plaintiff cites the ADA's service animal provision for reference, Plaintiff notes that, unlike the ADA, the FHA does not contain any minimum regulatory requirements for

animals to qualify as a reasonable accommodation. *See* 28 C.F.R. § 35 app. A (reviewing how the current ADA regulations define "service animal" to refer to a narrower class of animals than those protected under the FHA). Lastly, Plaintiff argues that federal regulations do not require dogs to undergo any official registration process. *Vaughn v. Rent-A-Ctr., Inc.*, No. 2:06-CV-1027, 2009 WL 723166, at *10 (S.D. Ohio Mar. 16, 2009)("[T]here is no requirement specifying the amount or type of training that an animal must receive to qualify as a service animal."); *Overlook*, v. 666 F. Supp. 2d at 857 (denying summary judgment because, unlike the ADA's, the FHA's guidelines do not require that a "service" animal be trained).

Plaintiff also argues that Defendants do not need to know that Plaintiff suffers from a specific disability, only that she is disabled and needs an accommodation. Landlords need not know about or inquire about the specific nature of a disability, but they must answer a reasonable request for accommodation. A landlord's duty begins is triggered once an accommodation request has been *made*. *See Smith v. Henderson*, 376 F.3d 529, 536 (6th Cir. 2004). Here, Plaintiff argues that she made a request once she asked for her dogs to be allowed. Plaintiff argues that choosing not to inquire does not negate Defendants' duty and that instead, Defendants should have asked her for more information.

The Court finds that there is no genuine issue of material fact on this issue. Plaintiff has not shown that she is disabled under the various Acts. Even if the Court considered *Overlook's* rationale and Plaintiff's arguments about the FHA being broader in scope than the ADA in terms of service animals, Plaintiff cannot establish that she ever made an accommodation request. In the employment context, the EEOC explains that an accommodation request must contain the need for "an adjustment or change at work for a reason related to a medical condition." EEOC Guidance, Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the ADA[6]. Ritchie asserts that he was never notified that Plaintiff's animals were service animals. The disability claims under the FHA [Count III], and PWDCRA [Counts VI and VII] must be dismissed.

### G. Intentional Infliction of Emotional Distress [Count X]

Defendants claim Plaintiff cannot establish that she suffers from emotional distress and ask the Court to dismiss Plaintiff's Intentional Infliction of Emotional Distress claim. To state a claim for Intentional

---

[6] https://www.eeoc.gov/laws/guidance/enforcement-guidance-reasonable-accommodation-and-undue-hardship-under-ada#requesting (last visited Dec. 3, 2020).

Infliction of Emotional Distress Plaintiff must show (1) extreme and outrageous conduct on the part of Defendants; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. *Mills v. Equicredit Corp.*, 344F. Supp. 2d 1071, 1080 (E.D. Mich. 2004); *see also Hiden v. Hurley Medical Center*, 831 F.Supp.2d 1024, 1046-47 (E.D. Mich. 2011) ("Liability for intentional infliction of emotional distress has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in civilized community.").

Defendants assert that Plaintiff cannot establish intent or recklessness because of their legitimate reasons for choosing not to rent to Plaintiff. To further their argument, Defendants indicate Plaintiff did not seek treatment related to any damages caused by emotional distress. Although treatment is not necessarily required to prove emotional distress, evidence of treatment lends support to the plaintiff's argument. *See id.* ("Although a physical manifestation of an emotional injury is not a sine qua non of recovery for intention infliction of emotional distress, the plaintiff carries a heavier burden to show emotional injury in the absence of physical injury. . . . Perhaps in recognition of the axiom that complete emotional tranquility is seldom attainable in this world, a plaintiff is not

entitled to recover damages for intentional infliction of emotional distress where she supplies no evidence of grief, depression, disruption of lifestyle, or of treatment for anxiety or depression.") (internal quotations and citations omitted).

Based on the submissions by the parties, the Court finds Plaintiff's testimony and evidence has created a genuine material issue of fact that Defendants' actions caused Plaintiff intentional infliction of emotional distress. The trier of fact may find that Ritchie's treatment and name calling of Plaintiff was extreme and outrageous conduct on the part of Defendants, which was intended or were made recklessly to cause Plaintiff severe emotional distress. Defendants' Motion for Summary Judgment as it pertains to Plaintiff's Intentional Infliction of Emotional Distress claim [Count X] is denied.

## H.    Assault [Count XI]

Defendants assert that Plaintiff cannot establish an Assault claim under Michigan law. Michigan defines assault as "any intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact coupled with the apparent ability to accomplish the contact." *See Marshall v. City of Farmington Hills*,

693 F. App'x 417, 427(6th Cir. 2017) quoting *Espinoza v. Thomas*, 189 Mich. App. 110, 472 N.W.2d 16, 21 (1991).   Here, Plaintiff alleges that Ritchie assaulted her by yelling and shaking his cane at her and by stomping his foot. Ritchie contends that one, this never happened, and even if it did, it could not have been assault. Because Ritchie is ninety years old, has polio, and walks with a cane, Defendants contend that he is incapable of "imminently accomplish[ing] the contact." Defendants also assert that Plaintiff offers no proof of damages and has not alleged a physical or emotional injury from the assault.

Plaintiff asserts that her assault claim precludes summary judgment because it is factual in nature, and not a "matter of law." Plaintiff argues that this Court cannot properly assume that "someone in their 90s (even one recovered from Polio) could not actually have aroused fear in a disabled person like [Plaintiff]." [ECF No. 70, PageID.965-66]

The Court finds there remain a genuine issue of material fact as to whether Ritchie assaulted Plaintiff.   Plaintiff has set forth her testimony that Ritchie waved his cane at her, and that she suffered apprehension of imminent contact by the cane.   The Court denies Defendants' Motion for Summary Judgment as it pertains to Plaintiff's Assault claim [Count XI].

## III.   DEFENDANTS' MOTION TO COMPEL [ECF No. 57]

The Court, having reviewed the parties' briefs and submissions, finds that Defendants's discovery requests were timely made and the Motion to Compel is meritorious.   However, in light of the Court's ruling and findings above and the passage of time, the Court directs the parties to meet and confer to determine if the outstanding discovery requests can be resolved. The Court denies without prejudice the motion, pending further review by the parties.   Defendants may refile the motion within 30 days from the entry of this Order as to the remaining outstanding discovery request if not resolved.

## IV.   CONCLUSION/ORDER

For the reasons set forth above

IT IS ORDERED that the Defendants' Motion for Summary Judgment **[ECF No. 59]** is GRANTED IN PART and DENIED IN PART as more fully set forth above.

IT IS FURTHER ORDERED that the following claims are **DISMISSED**:   Disability Discrimination under the FHA (Count III); Failure to Accommodate Disability claim under the PWDRA (Count VI); Disability Discrimination under the PWDRA (Count VII).

IT IS FURTHER ORDERED that the following claims **REMAIN**: Race and Natural Origin Discrimination under the FHA (Counts I, II); 42

U.S.C. § 1981 and § 1982 (Counts IV, V); National Origin Discrimination and Race Discrimination under the ELCRA (Counts VIII, IX); Intentional Infliction of Emotional Distress (Count X); and Assault (Count XI).

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment, considered as a Motion to Extend **[ECF No. 66]** is GRANTED.

IT IS FURTHER ORDERED that Defendants' Motion to Strike Response to Defendants' Motion for Summary Judgment **[ECF No. 72]** is DENIED.

IT IS FURTHER ORDERED that Defendants' Motion to Compel Discovery **[ECF No. 57]** is DENIED without prejudice.  Defendants may refile the motion within 30 days from the entry of this Order if the outstanding discovery requests remain unresolved after conferring with Plaintiff's counsel.

s/Denise Page Hood
DENISE PAGE HOOD
United States District Judge

DATED: October 5, 2023